UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jean E.,[1]

        Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

        Defendant.

Case No. 24-cv-1725 (SGE)

**ORDER**

---

This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). Plaintiff, Jean E. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her request for expedited reinstatement of benefits. The Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 405(g). Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. § 636(c).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern an action seeking judicial review of a decision of the Commissioner of Social Security, the present action should be "presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting reversal of the Commissioner's final decision and remand to the Social Security Administration for further administrative proceedings. (Dkt. 17.)[2] Defendant filed a brief

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Thus, when the Court refers to Plaintiff by her name only her first name and last initial are provided.

[2] Plaintiff also filed a Motion for Summary Judgment seeking the entry of judgment in her favor. (*See* Mot. (Dkt. 16).) However, the Federal Supplemental Rules of Civil Procedure, which govern this proceeding, no longer permit a party to file a motion for summary judgment in an action

asking this Court to affirm the Commissioner's underlying decision denying Plaintiff's request for expedited reinstatement of benefits and to dismiss this action. (Dkt. 22.)

For the reasons discussed herein, Plaintiff's request for relief (Dkt. 17) is **DENIED**, and Defendant's request for relief (Dkt. 22) is **GRANTED**.

## I. Background

In a determination dated October 31, 2006, Plaintiff was found to be disabled by the Commissioner of the Social Security Administration. (Tr. 115, 160.)[3] It was determined that Plaintiff was disabled because her physical impairments, including profound hearing loss, met or medically equaled a presumptive disabling listing, i.e., Listing 2.11B. (Tr. 115, 160.)[4] It was further determined that her disability began on June 1, 2005. (Tr. 115, 160.)[5] Plaintiff thus began receiving benefits. (*See* Tr. 115, 160.) In a finding dated March 4, 2015, it was determined that Plaintiff then continued to be disabled because her impairments continued to meet or medically equal Listing 2.11B. (Tr. 115, 164-167.)

---

seeking judicial review of a decision of the Commissioner of Social Security. Instead, the parties are required to present their arguments to the Court through the filing of memoranda. *See* Fed. R. Civ. P. SS Rule 5. Therefore, Plaintiff's Motion for Summary Judgment (Dkt. 16) is stricken as filed in error.

[3] Throughout this Order, the Court refers to the Administrative Record (Dkt. 15) by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the top-right corner of each page of the record.

[4] At the time of Plaintiff's initial determination, the listing she met was designated as Listing 2.08B. (Tr. 160.) However, the Listing's title has been amended and is now designated as Listing 2.11B. For ease of reference and continuity, the Court will refer to the Listing as Listing 2.11B.

[5] Plaintiff's brief incorrectly asserts that she was found disabled on June 1, 2006. (*See* Pl.'s Mem. (Dkt. 17) at 1.) This appears to be a scrivener's error. The record to which Plaintiff cites in support of the June 1, 2006, date specifically notes that she was found disabled as of June 1, 2005. (*See* Tr. 115.) Moreover, the "Disability Determination Transmittal" itself also specifically notes that Plaintiff's disability began on June 1, 2005. (*See* Tr. 160.)

The Commissioner later determined that Plaintiff had engaged in "work activity" which ended her eligibility to receive disability benefits. (Tr. 115, 191-93.) An administrative decision dated November 15, 2020, determined that Plaintiff's eligibility for disability ended on October 1, 2018. (Tr. 115, 191-93.) Plaintiff did not appeal this decision. (Tr. 115.)

On December 27, 2020, Plaintiff filed a request for expedited reinstatement of benefits. (Tr. 115, 594-600.)[6] The Commissioner denied Plaintiff's request for expedited reinstatement of benefits upon initial review on March 22, 2021, and again, upon reconsideration, on May 28, 2021. (Tr. 115, 194-202.) On June 26, 2021, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 115, 203.)

Administrative Law Judge Keith Kearney (hereinafter "ALJ") conducted a video hearing on April 13, 2022, at which Plaintiff was represented by legal counsel. (Tr. 115, 134-59.) Plaintiff along with an independent vocational expert, David Salewsky, testified at the hearing. (Tr. 134-59.) Following the administrative hearing, the ALJ arranged for Plaintiff to be evaluated by a psychiatrist. (Tr. 115.) Plaintiff underwent that evaluation on January 6, 2023. (Tr. 115.) The ALJ then took the psychiatrist's evaluation report and Plaintiff's counsel's response thereto into evidence as part of the administrative record. (Tr. 115.)

On April 3, 2023, the ALJ issued a decision denying Plaintiff's request for expedited reinstatement of disability benefits. (Tr. 115-27.) The ALJ concluded that Plaintiff had experienced

---

[6] "The expedited reinstatement provision provides" a claimant with "another option for regaining entitlement to benefits when" the Social Security Administration "previously terminated" the claimant's "entitlement to disability benefits due to" the claimant's "work activity. The expedited reinstatement provision provides" the claimant "the option of requesting that [her] prior entitlement to disability benefits be reinstated, rather than filing a new application for a new period of entitlement." 20 C.F.R. § 404.1592b

3

"medical improvement" and as a result of that improvement, was no longer disabled within the meaning of the Social Security Act. (Tr. 127.)

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1-7.) Subsequently, on March 15, 2024, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7.) As a result, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On May 11, 2024, Plaintiff filed this action. (Compl. (Dkt. 1).) Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs (Dkts. 17, 22.) and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Analysis

An application for expedited reinstatement of benefits is considered under the "medical improvement review" standard. *See* 20 C.F.R. § 404.1592c (a)(4)(iii). "This 'medical improvement' standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was [most recently] found disabled and awarded benefits." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008). Medical improvement is defined as "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that" the claimant was "disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1).

To determine the existence and extent of a claimant's medical improvement, the administrative law judge must follow an eight-step sequential analysis. This analysis requires the

4

administrative law judge to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. *See Delph*, 538 F.3d at 945. The Eighth Circuit has described this eight-step process as follows:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of [her] past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

*Id.* at 945-46.

### B. Appeals Council Review

If the claimant is dissatisfied with the administrative law judge's decision, the claimant may request review by the Appeals Council, although the Appeals Council is not required to grant that request for review. *See* 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

### C. Judicial Review

If a claimant remains dissatisfied with the final decision of the Commissioner following the resolution of claimant's request for review to the Appeals Council, the claimant may seek judicial review in federal court. Judicial review of the administrative decision generally proceeds

by considering the decision of the administrative law judge at each step of the eight-step sequential analysis discussed above.

Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Delph*, 538 F.3d at 945; *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005); *Buckner v. Apfel*, 213 F.3d 1006, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Buckner*, 213 F.3d at 1012 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *see Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the administrative law judge. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not alone prevent a particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the administrative law judge's finding merely because evidence exists in the administrative record to support a conclusion contrary to the Commissioner's findings. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the administrative law judge's decision, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009). Thus, the Court will not reverse the administrative law judge's "denial of benefits so long as the [administrative law judge's] decision falls within the

'available zone of choice.'" *Bradley*, 528 F.3d at 1115. The decision of the administrative law judge "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.*

### III. Decision Under Review

Before beginning the sequential analysis, the ALJ concluded that the most recent favorable decision finding that Plaintiff continued to be disabled was the March 4, 2015, determination. (Tr. 117; *see* 164.) Plaintiff does not challenge this conclusion. This March 4, 2015, determination is referred to as a "comparison point decision."

The ALJ then made the following determinations during the eight-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had engaged in substantial gainful activity during the fourth quarter of 2020, including December 2020 when she filed her request for expedited reinstatement of benefits. (Tr. 118.) The ALJ, however, also concluded that although Plaintiff continued to work after December 2020, her earnings did not exceed substantial gainful activity levels following December 2020. (Tr. 118.) Thus, the ALJ continued the sequential analysis which he applied to the "entire period since December 1, 2020." (Tr. 118.) The Court will refer to the time period between December 1, 2020, and the date of the ALJ's decision, April 3, 2023, as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 118-20.) Plaintiff challenges the ALJ's findings at step two.

At step three, the ALJ concluded that Plaintiff had experienced "medical improvement." (Tr. 120.) Specifically, the ALJ determined that while at the time of the comparison point decision Plaintiff was unable to understand or hear normal conversation, testing from July 2, 2020, demonstrated that Plaintiff was able to understand conversational speech. (Tr. 120.)

At step four of sequential analysis, the ALJ determined that Plaintiff's medical improvement was related to her ability to work. Plaintiff does not directly challenge this finding.[7]

At step six of the sequential analysis, the ALJ determined that Plaintiff had severe impairments. The ALJ also determined that Plaintiff had those severe impairments since December 1, 2020. (Tr. 121.) Plaintiff does not challenge the determination that she had severe impairments.

The ALJ then made the following RFC determination: "[C]laimant has had the residual functional capacity since December 1, 2020, to perform light work as defined in 20 CFR 404.1567(b) except," she can occasionally use ramps and stairs; she cannot use ladders, ropes, or scaffolds; she can frequently kneel, stoop, crouch, and crawl; she should avoid concentrated exposure to noise; she cannot work in jobs where hearing is required for safety; she cannot work in jobs where she would be required to use a telephone; she cannot work around hazards such as heights or machinery, but she is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; and she cannot work in jobs where she would have concentrated exposure to dust, fumes, odors, gases, or poorly ventilated areas. (Tr. 121.) Plaintiff challenges this RFC determination made by the ALJ.

---

[7] Because the ALJ determined that there had been medical improvement and that the medical improvement was related to Plaintiff's ability to work, the ALJ moved to step six of the sequential analysis. *See Delph*, 538 F.3d at 945 (providing that step five applies only if no medical improvement is found or the medical improvement is not related to the claimant's ability to work).

In reaching this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could have reasonably been expected to produce the symptoms found in her medical records[.]" (Tr. 122.) The ALJ, however, concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of the symptoms experienced" during the adjudicated period "are not entirely consistent with the objective medical evidence and other evidence." (Tr. 122.) Plaintiff does not challenge this credibility determination by the ALJ.[8]

At step seven of the sequential analysis, the ALJ concluded that Plaintiff did not have any past relevant work. (Tr. 126.) Plaintiff does not challenge this finding.

At step eight, the ALJ found that there were other jobs that existed in significant numbers in the national economy which Plaintiff could perform within the ALJ's RFC determination. (Tr. 126-27.) Relying upon testimony from the independent vocational expert, the ALJ specifically found that the occupations Plaintiff would be able to perform were "housekeeping cleaner" of which there are 193,000 positions in the national economy; "merchandise maker" of which there are 191,000 positions in the national economy; and "cleaner and polisher" of which there are 43,000 positions in the national economy. (Tr. 127.) Although Plaintiff does not directly challenge this finding, Plaintiff implicitly challenges this finding to the extent it is based on the ALJ's RFC determination which Plaintiff does challenge.

---

[8] "Social Security Ruling 16-3p eliminates use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." *Noerper v. Saul*, 964 F.3d 738, 745 n.3 (8th Cir. 2020). Although SSR 16-3p eliminated the use of the term "credibility," the elimination "largely changes terminology rather than the substantive analysis to be applied," and in discussing said analysis, Courts have continued to use the "credibility" terminology. *Noerper*, 964 F.3d at 745 n.3; *see Terra M. v. Colvin*, No. 23-cv-3849 (NEB/DLM), 2025 WL 593785, at *10 (D. Minn. Jan. 10, 2025), *report and recommendation adopted sub nom. Terra M. v. Dudek*, 2025 WL 591166 (D. Minn. Feb. 24, 2025); *Ricky T. v. Kijakazi*, No. 20-cv-2088 (LTS), 2023 WL 2664741, at *5 (N.D. Iowa Mar. 28, 2023).

### IV. Analysis

Plaintiff asserts three overarching arguments in her appeal of the ALJ's decision. Plaintiff first argues that the ALJ failed to fully and fairly develop the record by failing to consider whether Plaintiff's mental health impairments met or medically equaled a presumptively disabling listing as purportedly indicated on a previous Determination of Benefits. (Pl.'s Mem. at 2-5, 13.) Plaintiff next argues that that ALJ erred in his calculation of Plaintiff's substantial gainful activity in December 2020. (*Id.* at 5-7, 12.) Plaintiff lastly argues that the ALJ erred in his RFC determination by failing to properly take into account that Plaintiff's past work was done on a part-time basis with accommodations. (*Id.* at 7-10, 13.)[9]

Defendant contends that each of Plaintiff's arguments is unavailing and that the ALJ's decision is supported by substantial evidence. (*See* Def.'s Mem.) On that basis, Defendant asks this Court to affirm the ALJ's decision. (*See id.*)

### A. Mental Health Impairments and Medical Equivalency Listing

As observed above, the medical improvement standard requires the ALJ to compare Plaintiff's condition at the time of the ALJ's evaluation of the record to Plaintiff's condition at the time it was last determined that Plaintiff continued to be disabled. In the present case, Plaintiff's last favorable determination was the March 4, 2015, determination in which it was determined that Plaintiff continued to meet or medically equal Listing 2.11B. (Tr. 164-65.) This determination was part of the continuing review of Plaintiff's eligibility for disability benefits. (Tr. 164-65.) This

---

[9] Notably, Plaintiff's arguments all fail to acknowledge that her expedited request for reinstatement of benefits is evaluated using the "medical improvement" standard within the eight-step sequential analysis discussed above. (*See* Pl.'s Mem.) Instead, Plaintiff's arguments are all discussed in the context of the more typical five-step sequential analysis which is inapplicable to her expedited request for reinstatement of benefits. (*See id.*) Even so, the Court considers Plaintiff's arguments as if they were raised in the context of the eight-step sequential analysis applicable to Plaintiff's present claim.

March 4, 2015, determination is the comparison point decision for purposes of Plaintiff's request for expedited reinstatement of benefits. Some context in how that comparison point decision was reached is needed here to understand Plaintiff's argument.

As part of that continuing review, Plaintiff underwent a psychological evaluation on January 14, 2015, with Licensed Psychologist Dennis Anderson, M.A. (Tr. 764-69.) Mr. Anderson later authored a report in which he diagnosed Plaintiff with persistent depressive disorder with occasional major depressive episodes and non-specified anxiety disorder with significant features of social distress. (Tr. 768.)

After Mr. Anderson's report became part of the record, a state agency consultant, Ray Conroe, Ph.D., L.P., completed a "Medical Consultant Review (Mental)" form as part of Plaintiff's continuing disability review. (Tr. 788-90.) Mr. Conroe indicated that Plaintiff's receipt of disability benefits was due to it having been previously determined that Plaintiff's physical impairments, i.e., profound hearing loss, equaled Listing 2.11B. (Tr. 788.) Mr. Conroe did not indicate any other Listing which Plaintiff then met or equaled. (*See* Tr. 788-90.)

Based on the record before the Social Security Administration on March 4, 2015, including the opinions of Mr. Conroe and Mr. Anderson, it was determined that Plaintiff continued to be eligible to receive disability benefits. (Tr. 164-65.) Specifically, it was determined that Plaintiff met or equaled the presumptively disabling impairment at Listing 2.11B related to hearing loss. (Tr. 164.) Thus, Plaintiff's eligibility to receive disability benefits continued at that time. (Tr. 164-65.)

In the present case, Plaintiff's argument centers around Mr. Conroe's opinion in his "Medical Consultant Review (Mental)" form. (*See* Pl.'s Mem. at 2-5, 13.) Plaintiff's argument here is based on her belief that Mr. Conroe opined that Plaintiff met an unspecified mental health

Listing. (*Id.*) Based on that belief, Plaintiff argues that the ALJ erred in failing to consider her mental health impairments at step two of the sequential analysis and when comparing Plaintiff's condition at the time of the ALJ's review to Plaintiff's condition at the time of the comparison point decision. (*Id.*)[10] According to Plaintiff, remand is warranted because the ALJ's failure to consider the other unspecified Listing demonstrates that the ALJ failed to properly consider whether there was "medical improvement" relative to Plaintiff's mental health impairments. The Court is not persuaded by Plaintiff's argument here.

Put simply, Plaintiff's argument here is not support by the factual record. Mr. Conroe's "Medical Consultant Review (Mental)" form does not indicate that Plaintiff's mental health impairments met or equaled any mental health Listing. (*See* Tr. 788-90.) Mr. Conroe's "Medical Consultant Review (Mental)" form lacks any indication that Mr. Conroe formed the opinion that Plaintiff's mental health impairments met or equaled a presumptively disabling Listing. Even a review of the "Psychiatric Review Technique" form Mr. Conroe completed in forming his opinion does not indicate that Plaintiff's mental impairments created functional limitations which met or equaled a presumptive disabling Listing. (Tr. 774-86.) In fact, Mr. Conroe's "Psychiatric Review Technique" form specifically provides that Plaintiff's functional limitation related to her mental health impairments are less than the level of limitations necessary to meet or equal any relevant mental health Listing. (Tr. 784-85.)

For these reasons, the ALJ did not fail to consider the unspecified Listing purportedly contained within Mr. Conroe's "Medical Consultant Review (Mental)" form because the record does not establish that Mr. Conroe opined in the "Medical Consultant Review (Mental)" form that Plaintiff's mental health impairments met or equaled any Listing.

---

[10] Plaintiff does not challenge the ALJ's decision that she no longer met or equaled Listing 2.11B.

### B. Substantial Gainful Activity Calculations

Plaintiff next argues that that ALJ erred in his calculation of Plaintiff's substantial gainful activity. (Pl.'s Mem. at 5-7, 12.) Plaintiff summarizes her argument as follows: "Going to the payroll report provided by Walmart, [Plaintiff] had gross earnings in December, [sic] 2020 of $500.74 and $594.56. Adding them together, the total is $1,95.30 [sic]. [Substantial gainful activity] in 2020 was $1,260. She is clearly under SGA." (*Id.* at 12 (citation omitted).) Plaintiff's argument here is unpersuasive for at least two reasons.[11]

First, Plaintiff's argument improperly calculates substantial gainful activity using isolated earning figures from only a single month. That is not the manner in which substantial gainful activity is calculated or determined. *See, e.g.*, 20 C.F.R. § 404.1574 (b)(2)(ii). Instead, substantial gainful activity is calculated using the monthly average which is calculated by dividing the gross earning over given year or fiscal quarter by the number of months in which work was performed in the given interval of time. *See, e.g., id.*; *Franklin R. v. Kijakazi*, No. 22-cv-04031 (LRR), 2023 WL 4311642, at *5 (N.D. Iowa May 9, 2023), *appeal dismissed sub nom. Rask v. O'Malley*, No. 23-2562, 2024 WL 3243903 (8th Cir. Feb. 21, 2024); *Anderson v. Heckler*, 726 F.2d 455, 457 (8th Cir. 1984); *Conley v. Bowen*, 859 F.2d 261, 264 (2d Cir. 1988). Plaintiff may not calculate her earnings for the purposes of determining whether she engaged in substantial gainful activity by

---

[11] Plaintiff's memorandum also contains a substantial-gainful-activity related argument aimed at the November 15, 2020, administrative decision which terminated her benefits based on the finding that she had engaged in substantial gainful activity beginning in October 2018. (Pl.'s Mem. at 6.) Specifically, Plaintiff contends that it is "not clear how" the substantial gainful activities were calculated in the November 15, 2020, administrative decision. (*Id.*) Plaintiff did not, however, appeal that November 15, 2020, administrative decision terminating her benefits, and she thus cannot now challenge that decision or any portion of that decision in this Court. *See, e.g., Michael H. v. Kijakazi*, No. 21-cv-850 (JRT/JFD), 2022 WL 867026, at *3 (D. Minn. Mar. 23, 2022) (citing *Sipp v. Astrue*, 641 F.3d 975, 980 (8th Cir. 2011)); *Sims v. Apfel*, 530 U.S. 103, 107 (2000); 42 U.S.C. § 405(g); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003).

looking at a single month and ignore her other earning in the relevant year or fiscal quarter. *See, e.g.*, 20 C.F.R. § 404.1574 (b)(2)(ii).

As the ALJ noted, Plaintiff earned $4,085.00 in the fourth quarter of 2020. (Tr. 622.) Plaintiff worked all three months in the fourth quarter of 2020. (Tr. 602.) Dividing her gross income for the fourth quarter of 2020 by three months yields a monthly average of $1,361.66, which is $101.66 more than the monthly, presumptive substantial gainful activity amount for 2020. This is substantial evidence in support of the ALJ's finding that Plaintiff engaged in substantial gainful activity in December 2020. *See Brown v. Astrue*, No. 7-cv-4039, 2008 WL 906642, at *3 (W.D. Ark. Apr. 2, 2008).

Second, Plaintiff's argument here is unpersuasive because even if Plaintiff could demonstrate that the ALJ improperly calculated her earning for purposes of determining whether she engaged in substantial gainful activity in December 2020, Plaintiff has failed to demonstrate that she suffered any harm as a result of the ALJ's alleged error. In other words, Plaintiff has failed to demonstrate that the alleged error would have any bearing on the ALJ's ultimate decision. Although the ALJ determined that Plaintiff engaged in substantial gainful activity in December 2020, the ALJ nevertheless continued with the subsequent steps in the sequential analysis. (*See* Tr. 118.) Thus, even if the ALJ had erred in calculating Plaintiff's substantial gainful activity, that error was harmless.

It is typically the plaintiff who bears the burden of demonstrating harm. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). To do so, a plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012) (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008); *Hensley v.*

*Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)). A harmless error does not warrant remand. *Byes*, 687 F.3d at 917-18.

Even assuming solely for the sake of argument that the ALJ erred in concluding that Plaintiff engaged in substantial gainful activity in December 2020, it was a harmless error.[12] There is simply no indication in the record that correcting the alleged error would result in the ALJ reaching a different conclusion regarding Plaintiff's request for expedited reinstatements of benefits. The only possible harm Plaintiff could have suffered by a miscalculation of her substantial gainful activity in December 2020 would be if the ALJ ended the sequential analysis upon finding that Plaintiff had engaged in substantial gainful activity, 20 C.F.R. § 404.1592f (a), but the ALJ did not stop there. Instead, the ALJ continued the sequential analysis to consider the merits of Plaintiff's request for expedited reinstatements of benefits. Thus, the error was harmless and would not require remand.

### C. Part-time Work with Accommodations

Plaintiff next argues that the ALJ erred in his RFC determination by failing to properly take into account that Plaintiff's past work was done on a part-time basis with accommodations from Plaintiff's employer. (Pl.'s Mem. at 7-10, 13.) Plaintiff argues that if the ALJ had properly considered the nature of her work at Walmart the resulting RFC would have resulted in a finding that she was disabled. (*Id.*) The Court is not persuaded by Plaintiff's argument.

In support of her argument here, Plaintiff relies heavily on her own testimony at the administrative hearing regarding the nature of her work and the manner in which she performed that work. (*See id.*) This argument is unpersuasive because it fails to account for the fact that the

---

[12] Notably, Plaintiff does not argue that she suffered any harm regarding the ALJ's alleged miscalculation of Plaintiff's substantial gainful activity in December 2020. (*See* Pl.'s Mem.)

ALJ found Plaintiff's statements regarding the limiting effects of her impairments to be not entirely consistent with the objective medical evidence and other evidence in the record. *Della S. v. Saul*, No. 20-cv-40 (DSD/LIB), 2021 WL 640718, at *5 (D. Minn. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 638166 (D. Minn. Feb. 18, 2021). And Plaintiff does not challenge the ALJ's credibility determination. (*See* Pl.'s Mem.)[13]

Moreover, Plaintiff's argument also fails because, in making her argument, she merely highlights the portions of the record, including her own testimony, which she believes support her claim and asks this Court to reevaluate said evidence in order to reach a different conclusion than that of the ALJ. (*See id.*) Plaintiff does not contend that the ALJ failed to consider the evidence to which Plaintiff now points; rather, Plaintiff argues that the ALJ should have credited portions of the record differently than he did. (*See id.*)[14] The Court may not, however, substitute its own judgment for that of the ALJ or reverse the ALJ's conclusion merely because Plaintiff perceives substantial evidence in the record which supports an opposite conclusion. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015); *Woolf*, 3 F.3d at 1213; *Bradley*, 528 F.3d at 1115. Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered and come to a different

---

[13] To the extent Plaintiff argues that her employment cannot be considered because she worked on only a part-time basis, her argument fails. "The Eighth Circuit has previously held that part-time work may be considered in assessing a person's ability to perform substantial gainful activity." *Thomas R. W. v. Saul*, No. 18-cv-3041 (SRN/TNL), 2019 WL 5328786, at *6 (D. Minn. Oct. 3, 2019), (citing *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)), *report and recommendation adopted*, 2019 WL 5305494 (D. Minn. Oct. 21, 2019).

[14] The ALJ specifically discussed all of the evidence Plaintiff relies upon here in support her argument, including her testimony regarding her part-time employment and her testimony that her employer made certain accommodations for her. (*Compare* Pl.'s Mem. at 7-10, 13 *with* ALJ's Decision at Tr. 119-20, 122.) Plaintiff does not highlight any evidence in the record which she alleges that ALJ failed to consider. (Pl.'s Mem. at 7-10, 13.)

conclusion than the ALJ. The applicable standards of review preclude the Court from taking such action here. *See Milam*, 794 F.3d at 983; *Woolf*, 3 F.3d at 1213.

### D. Substantial Evidence

Other than her arguments discussed above, Plaintiff does not offer any substantive argument contending that the record as a whole lacks substantial evidence to support the ALJ's ultimate conclusion. (*See* Pl.'s Mem.) Nevertheless, Plaintiff's memorandum contains passing references to the need for substantial evidence without directing those references to a particular portion of the ALJ's decision. (*See id.*) Thus, the Court will, in an abundance of caution, further discuss whether substantial evidence supports the ALJ's overall decision.

The Court's review of the record as a whole indicates that substantial evidence supports the ALJ's ultimate decision that Plaintiff had not become disabled again since her eligibility for disability ended on December 1, 2020. Specifically, on the Court's review of the record as a whole, the ALJ's decision that Plaintiff experienced medical improvement is supported by substantial evidence in the record.[15] The record as a whole likewise demonstrates that substantial evidence

---

[15] As part of her evaluation prior to the comparison point decision, Plaintiff underwent a hearing evaluation on March 2, 2015. (Tr. 792.) That evaluation concluded that Plaintiff's hearing loss prevented her from understanding conversational speech. (Tr. 792, 832, 849.) But by July 2, 2020, Plaintiff's hearing had improved to a level where she could understand conversational speech. (Tr. 807-08, 832, 849.) The treatment notes from her July 2, 2020, evaluation states that "[s]peech testing revealed that" Plaintiff was "scoring above average cochlear implant performance bilaterally, a significant improvement from her pre-implant performance." (Tr. 808). At the time of the March 2, 2015, evaluation Plaintiff had a 43% word recognition score bilaterally, but by July 2, 2020, that score had risen to 84% in her left ear, 76% in her right ear, and at least 88% bilaterally. (Tr. 801, 806-07.) Plaintiff's change from being unable to understand conversational speech to understanding conversational speech at a level above average for an individual with a cochlear implant represents medical improvement for the purposes of Plaintiff's request for expedited reinstatement of benefits. *See* 20 C.F.R. § 404.1594(c)(1) (noting that "medical improvement" is the decrease in the medical severity of an impairment present at the time of the comparison point decision which can be demonstrated through symptoms, signs, and objective laboratory findings).

supports the ALJ's decision that Plaintiff's medical improvement relates to her ability to work.[16] The undersigned further concludes that the ALJ's decision to discount Plaintiff's subjective complaints, the ALJ's evaluation of the medical opinions in the record, the ALJ's RFC determination, and his decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination were each supported by substantial evidence in the record.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. 16) is **STRICKEN as filed in error**;

2. Plaintiff's request for relief (Dkt. 17) is **DENIED**; and

3. Defendant's request for relief (Dkt. 22) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  September 24, 2025                                          *s/Shannon G. Elkins*
                                                                    Hon. Shannon G. Elkins
                                                                    United States Magistrate Judge

---

[16] In the March 4, 2015, comparison point decision it was determined that Plaintiff's met or medically equaled the requirements of Listing 2.11B. (Tr. 802.) However, in his January 22, 2024, decision, the ALJ concluded that Plaintiff's impairments, whether considered separately or in combination, no longer meet or equal Listing 2.11B. (Tr. 121.) Plaintiff does not challenge the ALJ's decision that she no longer meets or medically equals Listing 2.11B. (*See* Pl.'s Mem.) Because Plaintiff's medical improvement reduced the severity of her impairments to a level at which she no longer met or equaled the requirements of Listing 2.11B, the relevant statutory provisions dictate that Plaintiff's medical improvement is related to her ability to work. *See* 20 C.F.R. § 404.1594 (c)(3)(i); *Penyweit v. Barnhart*, 156 F. App'x 868, 870 (8th Cir. 2005); *Cochran v. Kijakazi*, No. 22-cv-2008 (PKH/MEF), 2023 WL 1163110, at *2 (W.D. Ark. Jan. 11, 2023), *R&R adopted*, 2023 WL 1120891 (W.D. Ark. Jan. 30, 2023).